UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALBERT WINTERBAUER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:07 CV 1026 DDN |
| ) | |
| LIFE INSURANCE COMPANY OF ) | |
| NORTH AMERICA, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the court on the second motion of plaintiff Albert Winterbauer to compel discovery responses from defendant Life Insurance Company of North America. (Doc. 42.) The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Doc. 12.) A hearing was held, by telephone conference, on September 11, 2008.

## **I. BACKGROUND**

Plaintiff Albert Winterbauer brought this ERISA action against defendant Life Insurance Company of North America (LINA), alleging LINA acted in bad faith when the company denied him benefits under the employee welfare benefit plan. (Doc. 1 at ¶ 1.) In Count I of his complaint, Winterbauer asserts a claim to recover his disability benefits under the benefit plan. (Id. at ¶¶ 26-27.) In Count II of his complaint, Winterbauer asserts a claim for breach of fiduciary duty. (Id. at ¶¶ 28-29.)

## **II. MOTION TO COMPEL**

In the motion to compel, Winterbauer seeks to compel responses to two sets of interrogatories and two sets of requests for production of documents. In particular, he seeks responses to all of the First Set Interrogatories 1 through 26, except numbers 1, 2, 21, and 22; all of the First Requests for Production of Documents 1 through 17, except numbers 1, 6, 14, 15, and 17; all of the Second Set Interrogatories; and all of

the Second Requests for Production of Documents.  (Doc. 42 at 2-4.) Winterbauer also seeks to depose Dr. Victoria Langa.  (Doc. 43 at 7.)

In support of the motion to compel, Winterbauer argues that the court should review the defendant's actions under a de novo standard of review.  He argues there are no plan documents that grant LINA discretionary authority.  Winterbauer also argues that he should be able to discover specific evidence concerning the extent to which LINA was acting under a financial conflict of interest.  (Doc. 43.)

In response, LINA argues that the court should review its actions under an abuse of discretion standard.  LINA also argues that additional discovery is not allowed in ERISA cases subject to abuse of discretion review.  Finally, LINA argues that the appearance of a conflict of interest does not necessarily change the standard of review.  (Doc. 47.)

### III.  DISCUSSION

The Employee Retirement Income Security Act (ERISA) was enacted to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits.  <u>Firestone Tire and Rubber Co. v. Bruch</u>, 489 U.S. 101, 113 (1989).  In most ERISA cases, an employee's claim for benefits will hinge on the interpretation of the terms in the plan at issue.  <u>Id.</u> at 115.  As a result, the standard by which a court reviews these interpretations takes on a critical importance.  <u>See</u> <u>id.</u>

**Standard of Review**

A court reviews the denial of plan benefits under a de novo standard of review, unless the benefit plan provides otherwise.  <u>Metro. Life Ins. Co. v. Glenn</u>, 128 S.Ct. 2343, 2348 (2008).  A court reviews the denial of plan benefits under a deferential standard of review if the plan grants "the administrator or fiduciary <u>discretionary authority</u> to determine eligibility for benefits."  <u>Id.</u> (quoting <u>Firestone</u>, 489 U.S. at 115).  To fall within the court's deferential review, the plan documents must contain explicit language conferring discretionary authority.  <u>McKeehan v. Cigna Life Ins. Co.</u>, 344 F.3d 789, 793 (8th Cir. 2003).

Under ERISA, the plan documents include both the policy and the accompanying Summary Plan Description (SPD). Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan, 476 F.3d 626, 629 (8th Cir. 2007). Indeed, Congress requires plan administrators to provide SPDs to every plan participant and beneficiary. 29 U.S.C. § 1022(a)(1); Jensen v. SIPCO, Inc., 38 F.3d 945, 952 (8th Cir. 1994). In light of this disclosure requirement, if the formal plan provisions conflict with the summary plan provisions, the SPD provisions prevail as a matter of law. Marolt v. Alliant Techsystems, Inc., 146 F.3d 617, 621 (8th Cir. 1998); Barker v. Ceridian Corp., 122 F.3d 628, 633 (8th Cir. 1997). "[W]here an SPD conflicts with the terms of another plan document, it has often been said that the SPD governs." Koons v. Aventis Pharm., Inc., 367 F.3d 768, 775 (8th Cir. 2004). This rule of construction is inapplicable however, if the plan document is specific on a particular issue, and the SPD is silent. Jensen, 38 F.3d at 952. "While clear and unambiguous statements in the summary plan description are binding, the same is not true of silence." Id.

In this case, the language of the SPD provides for discretionary review. The SPD states,

> "The Insurance Company has complete authority, responsibility and discretion to construe Plan terms, to determine all questions of eligibility and status under the Plan, to make all decisions concerning claims for benefits and to make a full and fair review of each claim for benefits which has been denied."

(Doc. 43, Ex. 2 at 9-10.)

In Rittenhouse, the language of the policy granted the policy administrator "full discretion and authority to manage the Group Policy, administer claims, and interpret all Group Policy terms and conditions." Rittenhouse, 476 F.3d at 629. In McKeehan, the language of the plan granted the sponsor "full and exclusive authority to control and manage the Plan, to administer claims, and to interpret the Plan . . . ." McKeehan, 344 F.3d at 792. In another case, the language of the policy gave the plan administrator "full discretion and authority to determine eligibility for benefits and to construe and interpret [its] terms and provisions." McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026, 1027

(8th Cir. 2000). In each of these three cases, the Eighth Circuit found the language in question provided for discretionary review. Rittenhouse, 476 F.3d at 629-30. Looking to these three examples, the language of the SPD in question contains the explicit language necessary to confer discretionary authority on the plan administrator. See id. Since the SPD speaks to the issue explicitly, a deferential standard of review applies to LINA's benefits decisions. See Glenn, 128 S.Ct. at 2348.

Winterbauer argues that the SPD does not grant LINA discretionary authority, because the SPD never mentions LINA. The SPD does not define the "insurance company" in question. (See Doc. 43, Ex. 2.) Since the SPD is silent on the issue, the court looks to the policy itself. Jensen, 38 F.3d at 952. Under the heading "DEFINITIONS" and then "INSURANCE COMPANY," the policy states that the "Insurance Company underwriting the Policy is named on the Policy cover page." (Doc. 43, Ex. 1 at 23-24.) The cover page refers to Life Insurance Company of North America, a stock insurance company. (Id. at 1.) Under the circumstances, it seems clear that LINA is the "Insurance Company" contemplated by the SPD.

Winterbauer also argues that the language of the policy controls over the language of the SPD. (Doc. 43 at 5-6) (discussing Schwartz v. Prudential Life Ins. Co. of Am., 450 F.3d 697 (7th Cir. 2006)). But as noted above, Eighth Circuit precedent appears to be otherwise. Barker, 122 F.3d at 633-34; see also Admin. Comm. of the Wal-Mart Stores, Inc. v. Gamboa, 479 F.3d 538, 544 (8th Cir. 2007) ("[T]he terms of a summary plan description prevail even if they conflict with the provisions of a formal plan . . . ."). Winterbauer's reliance on case law from other circuits is therefore unavailing.

The Supreme Court's recent decision in Glenn does not change this analysis. See Wakkinen v. UNUM Life Ins. Co. of Am., 531 F.3d 575, 581 (8th Cir. 2008). In Glenn the Supreme Court held that a plan administrator that both determines eligibility and pays the claims operates under a conflict of interest. Glenn, 128 S.Ct. at 2348. This conflict of interest, however, "did not lead the Court to announce a change in the standard of review." Wakkinen, 531 F.3d at 581. In fact, Glenn reaffirmed the rules for deciding whether a reviewing court should

apply a de novo or an abuse of discretion standard.  Gutta v. Standard Select Trust Ins. Plans, No. 06-3708, 2008 WL 3271414, at *1 (7th Cir. Aug. 8, 2008).  Where the plan grants the administrator discretionary authority, the reviewing court continues to apply the abuse of discretion standard.  Wakkinen, 531 F.3d at 581.  The Supreme Court merely stated that the examining court should consider the conflict of interest as a factor when conducting its deferential review.  Glenn, 128 S.Ct. at 2350-51.  Simply put, "not every allegation of [partiality] alters the standard of review."  Farley v. Ark. Blue Cross and Blue Shield, 147 F.3d 774, 776 (8th Cir. 1998).

A deferential standard of review applies to LINA's benefits decisions.  LINA's conflict of interest, as the insurer and administrator of the policy, will be considered as a factor when conducting the deferential review.

**The Discovery Rules before Glenn**

Congress passed ERISA in an effort to provide employees and beneficiaries a quick and inexpensive mechanism for resolving disputes over benefits.  Palmer v. Univ. Med. Group, 973 F. Supp. 1179, 1188 (D. Or. 1997).  Permitting extensive discovery in the ERISA context would increase both the complexity and cost of ERISA litigation, to the point where the sums expended conducting discovery and litigating discovery disputes could easily exceed the amount in dispute.  Id.  The admission of additional evidence, outside the administrative record, would also expose employees and their beneficiaries to fewer protections than Congress intended.  Caldwell v. Life Ins. Co. of N. Am., 165 F.R.D. 633, 636 (D. Kan. 1996).  Extensive discovery is therefore strongly discouraged in ERISA cases.  See Brown v. Seitz Foods, Inc. Disability Benefit Plan, 140 F.3d 1198, 1200 (8th Cir. 1998).  "[A]dditional evidence gathering is ruled out on deferential review, and discouraged on de novo review to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators."  Id.  Instead, judicial review of the administrator's decision is typically limited to examining the administrative record created during the decision-making process.  LaSalle v. Mercantile

Bancorporation, Inc. Long Term Disability Plan, 498 F.3d 805, 811 (8th Cir. 2007).

Despite these general rules, some limited discovery may still be appropriate in an ERISA case - even where the standard of review is deferential. See Rittenhouse, 476 F.3d at 630-31. To support discovery, a plaintiff must show good cause. See id. at 630. "[T]he district court may permit discovery and supplementation of the record to establish [a conflict of interest] if the plaintiff makes a showing of good cause." Menz 520 F.3d 865, 870 (8th Cir. 2008) (reviewing the case under abuse of discretion review). This standard all but requires an affidavit or certain factual allegations. Semien v. Life Ins. Co. of N. Am., 436 F.3d 805, 815 (7th Cir. 2006). As a result, district courts should limit discovery unless there are "exceptional circumstances." Id. After all, an ERISA proceeding is a review proceeding - not an evidentiary proceeding. Id.

However, as noted below, Glenn may have changed the full force of these general discovery rules.

**Scope of Discovery after Glenn**

There are two practical, albeit competing, considerations surrounding this motion. On the one hand, there is no practical way to determine the extent of the administrator's conflict of interest without looking beyond the administrative record. Albert v. Life Ins. Co. of N. Am., 156 F. App'x 649, 653 (5th Cir. 2005) (per curiam). As a result, a court should not be limited to the administrative record alone, when determining the existence and extent of a conflict of interest. Id. On the other hand, situations where the plan administrator both evaluates and pays the claims are commonplace. Glenn, 128 S.Ct. at 2353 (Roberts, C.J., concurring). This makes the "conflict of interest at issue here [] a common feature of ERISA plans." Id. Taken together, discovery decisions in this area of the law often turn on case-specific factors. Id. at 2351.

Given the case-specific nature of the required focus, courts considering ERISA discovery disputes in the aftermath of Glenn have reached very different decisions. In some instances, the courts have

allowed varying degrees of discovery to proceed. See e.g., Sanders v. Unum Life Ins. Co. of N. Am., No. 4:08 CV 421 JLH, 2008 WL 4493043, at *4 (E.D. Ark. Oct. 2, 2008) (permitting discovery relating to any financial incentives anyone might have had to deny plaintiff's claim); Achorn v. Prudential Ins. Co. of Am., No. 1:08 CV 125 JAW, 2008 WL 4427159, at *6 (D. Me. Sept. 25, 2008) (permitting discovery of, among other things, the amount and rate of compensation paid to third-party firms that reviewed plaintiff's claim for benefits); Burgio v. Prudential Life Ins. Co. of Am., --- F.R.D. ----, No. 06 CV 6793 (JS)(AKT), 2008 WL 4376241, at *18 (E.D.N.Y. Sept. 24, 2008) (allowing one deposition, and permitting discovery of, among other things, information relating to the compensation or awards paid to individuals involved in the denial of plaintiff's claim for benefits); Myers v. Prudential Ins. Co. of Am., --- F. Supp. 2d ----, No. 1:08 CV 22, 2008 WL 4569969, at *10 (E.D. Tenn. Sept. 22, 2008) (expressing an inclination to permit discovery of bonus or reward programs for employees reviewing disability claims, the identity of a physician's employer, and the financial relationship between that employer and the plan administrator); Garg v. Winterthur Life, --- F. Supp. 2d ----, No. 07 CV 510 (ADS)(AKT), 2008 WL 4004960, at *8 (E.D.N.Y. Aug. 26, 2008) (permitting discovery relating to whether the administrator had a conflict of interest, and whether that conflict influenced its decision); Hogan-Cross v. Metro. Life Ins. Co., 568 F. Supp. 2d 410, 414 (S.D.N.Y. 2008) (permitting discovery relating to the compensation paid to employees and outside consultants involved in denying plaintiff's claim for benefits).

In other instances, the courts have not allowed the plaintiff to engage in discovery. See e.g., Christie v. MBNA Long Term Disability Plan, No. 1:08 CV 44 JAW, 2008 WL 4427192, at *1, *3 (D. Me. Sept. 25, 2008) (denying plaintiff's motion for discovery of the administrator's internal policies and procedures, incentive programs, and structures for "walling off" claims handlers); Marszalek v. Marszalek & Marszalek Plan, No. 06 C 3558, 2008 WL 4006765, at *2 (N.D. Ill. Aug. 26, 2008) (rejecting plaintiff's request to allow any discovery in an ERISA case); Singleton v. Hartford Life & Accident Ins. Co., No. 4:08 CV 361 WRW, 2008 WL 3978680, at *1, *1 n.2 (E.D. Ark. July 29, 2008) (denying plaintiff's

- 7 -

motion for production of documents that described performance awards, incentives, and bonuses for employees involved in plaintiff's claim); Florczyk v. Metro. Life Ins. Co., No. 5:06 CV 309 GHL, 2008 WL 3876096, at *3 (N.D.N.Y. July 11, 2008) (rejecting plaintiff's request for discovery of administrator's claims handling procedures, internal training materials, bonus and incentive plans, and internal structure).

To a large extent, the different outcomes reflect the courts' varying interpretations of Glenn itself. While some courts have found Glenn did not change the discovery rules surrounding ERISA benefit cases, other courts have reached the exact opposite conclusion. Compare Sanders, 2008 WL 4493043, at *4 (finding Glenn does not mandate a change in the discovery rules for ERISA benefit determination cases); Christie, 2008 WL 4427192, at *2 (same); and Singleton, 2008 WL 3978680, at *1 (finding Glenn did not change the good cause standard or other evidentiary rules governing ERISA cases), with Myers, 2008 WL 4569969, at *8 (finding Glenn warned against establishing special evidentiary procedures for ERISA benefit determination cases); and Hogan-Cross, 568 F. Supp. 2d at 415 (finding Glenn rejected special procedural and evidentiary rules, and thus eliminated the "limitations on discovery unique to ERISA cases . . . ."). Simply put, Glenn's effect on the discovery rules for ERISA cases remains unclear.

In this case, the court believes Glenn permits some amount of discovery. In Glenn, the Supreme Court highlighted several factors worth considering in a conflict of interest case. Glenn, 128 S.Ct. at 2351-52. The first factor was whether the administrator had a history of biased claims administration. Id. at 2351. The second factor focused on whether the administrator had taken active steps to reduce potential bias and promote accuracy in its benefits decisions - either by walling off claims administrators from the finance section of the firm, or by imposing management checks designed to penalize inaccurate decision-making. Id. The third factor looked to the interplay between the administrator's decision and any related disability decisions by the Social Security Administration. Id. at 2352. The last factor considered the administrator's use of the medical evidence, and focused on whether

certain medical reports were downplayed, and whether the medical experts were provided with all the relevant evidence. Id.

In light of this analysis, it seems logical to allow some discovery on issues related to these four factors, or - as the case may be - other relevant factors. See Hogan-Cross, 568 F.Supp.2d at 415 ("[N]ot all conflicts are created equal. Their significance in any given case depends upon all of the circumstances, including those suggesting a higher or lower likelihood that the conflict affected the decision."). But absent serious procedural deficiencies, discovery into the substantive merits of a claim remains off limits. Myers, 2008 WL 4569969, at *9; see also Caldwell, 165 F.R.D. at 637 ("[T]he parties are not entitled to present new evidence outside the record on the merits of plaintiff's claim for benefits . . . .").

**Winterbauer's Motion to Compel**

In support of his motion to compel, Winterbauer alleges that MLS National Evaluation Services (MLS) has, in at least one prior case, altered a doctor's disability report. He has provided the name of this case and the jurisdiction, but has not provided a case number, an opinion from the case, or any affidavit to support this allegation. (Id. at 7-8.) He alleges that LINA used MLS to perform the peer review, and that LINA relied on this review in their final denial. He also notes that LINA is the underwriter and administrator of the plan in question. (Id. at 13.)

**Interrogatory Discovery Not Ordered**

A number of the interrogatories and requests for documents speak to the merits of the benefits decision. Under Myers, these interrogatories present non-discoverable issues. Myers, 2008 WL 4569969, at *9. Other interrogatories and requests for documents seek the names, personal information, and financial information of the employees involved in evaluating Winterbauer's claim, of the individuals who might testify as experts at trial, and of the individuals who are experts but who would not testify at trial. These interrogatories are not relevant to the conflict of interest. See id. at *10 (expressing a disinclination to

allow discovery of the pay records and personnel files of defendant's employees, and of the physicians who reviewed plaintiff's claim).

**Interrogatory and Document Discovery Ordered**

First Set Interrogatory 11 asks the defendant to "Explain in detail all steps taken by you to determine the eligibility of Plaintiff for the benefits which are the subject of this lawsuit." (Doc. 43, Ex. 3 at 5.) Second Set Interrogatory 11 asks the defendant to identify the internal guidelines and policies that interpret the policy issued in this case. (Id., Ex. 5 at 5.) First Document Request 10 asks the defendant to produce "All documents detailing the process by which Plaintiff's claim was denied." (Id., Ex. 4 at 5.) Each of these requests speaks directly to any potential conflicts in the evaluation of Winterbauer's claim. See Sanders, 2008 WL 4493043, at *4 ("Sanders is entitled to know whether the review conducted by [the defendant] in his case complied with [the defendant's] internal guidelines and policies, if such guidelines and policies exist."). The defendant shall respond to these three discovery requests.

First Set Interrogatory 26 asks the defendant to "Explain in detail all information provided to Dr. Victoria Langa in preparation for her independent medical evaluation of Plaintiff's medical status, and explain every communication (written or verbal) you had with her regarding the details of her report." (Doc. 43, Ex. 3 at 11.) The answer to this interrogatory will reveal whether Dr. Langa was provided with all the relevant evidence in conducting her review – a factor discussed in Glenn. See Glenn, 128 S.Ct. at 2352. The defendant shall respond to this interrogatory.

Second Set Interrogatories 6 and 13 ask the defendant to provide information concerning the medical evaluations performed by non-employees, and their levels of compensation. (Doc. 43, Ex. 5 at 4, 6.) These two interrogatories are relevant to the administrator's conflict of interest. See Sanders, 2008 WL 4493043, at *4 (permitting discovery on the issue of whether individuals evaluating plaintiff's claim had a financial incentive to deny benefits); see also Hogan-Cross, 568 F. Supp. 2d at 415 ("Information bearing on the manner in which a conflicted plan

administrator compensates outside consultants could be highly pertinent."). The defendant shall respond to these two interrogatories.

**Doctor's Deposition Not Ordered**

Finally, Winterbauer seeks to depose Dr. Victoria Langa. In an ERISA case, the predicate for discovery "is a firm basis on which to consider the possibility of the independent medical examiner's bias or impropriety." <u>Abram v. Cargill, Inc.</u>, No. 01 CV 1656 JMR/FLN, 2003 WL 1956218, at *3 (D. Minn. Feb. 10, 2003) (denying plaintiff's motion to compel the deposition of an independent medical examiner). Allowing a deposition to go forward, without any material, probative evidence of bias invites a fishing expedition. <u>Id.</u> Winterbauer has not shown good cause for deposing Dr. Langa. He has not alleged that Dr. Langa performed her examination improperly or with any bias, and has not provided any information on the type or scope of questions he would ask Dr. Langa.

## IV. CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that the motion of plaintiff Albert Winterbauer to compel discovery responses from defendant Life Insurance Company of North America (Doc. 42) is granted in that defendant Life Insurance Company of North America, within 30 days shall respond to First Set Interrogatories 11 and 26; Second Set Interrogatories 6, 11, and 13: and First Document Request 10. In all other respects, the motion to compel is denied.

　　　　　　　　　　　　　　　　　　　　<u>　/S/ David D. Noce　　　　</u>
　　　　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

Signed on October 20, 2008.